[851 NYS2d 196]

THE PEOPLE OF THE STATE OF NEW YORK, by ELIOT SPITZER, AT-
TORNEY GENERAL OF THE STATE OF NEW YORK, et al.,
Respondents, v MAURICE R. GREENBERG and HOWARD I.
SMITH, Appellants. AMERICAN INTERNATIONAL GROUP, INC.,
Nonparty Respondent.

First Department, February 19, 2008

### APPEARANCES OF COUNSEL

*Boies, Schiller & Flexner LLP*, New York City (*Nicholas A. Gravante, Jr., Steven I. Froot, Marianne Fogarty, Amy L. Neuhardt, Stephen A. Larson* and *David Boies* of counsel); *David Boies*, Armonk; *Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C.*, New York City (*Robert G. Morvillo* of counsel); *Skadden, Arps, Slate, Meagher & Flom LLP*, New York City (*John L. Gardiner* and *Steven J. Kolleeny* of counsel), for Maurice R. Greenberg, appellant.

*Winston & Strawn LLP*, New York City (*Vincent A. Sama, Eric M. Robinson* and *Catherine B. Schumacher* of counsel); *Andrew M. Lawler, P.C.*, New York City, for Howard I. Smith, appellant.

*Andrew M. Cuomo, Attorney General*, New York City (*Jeffrey P. Metzler, Benjamin N. Gutman* and *Shaifali Puri* of counsel), for state respondents.

*Paul, Weiss, Rifkind, Wharton & Garrison LLP*, New York City (*Roberta A. Kaplan, Martin Flumenbaum* and *Patrick J. Walsh* of counsel), for American International Group, Inc., respondent.

### OPINION OF THE COURT

MALONE, J.

In February 2005, American International Group (AIG), a Delaware corporation with its principal place of business in New York, received document subpoenas from the New York Attorney General's Office (NYAG) and the Securities and Exchange

Commission relating to two reinsurance transactions involving a subsidiary of AIG and a subsidiary of General Reinsurance Corporation. The inquiries ultimately expanded to include a host of transactions and accounting entries by AIG, then led by defendants Greenberg, who served as AIG's CEO from 1968 until March 2005, and Smith, who served as AIG's CFO from 1996 until March 2005. According to AIG, both Greenberg and Smith resigned from the board of directors in June 2005; however, Greenberg and Smith assert that they resigned in March 2005.

On May 26, 2005, NYAG filed a complaint (the original complaint) charging AIG, Greenberg and Smith with violating Executive Law § 63 (12) and General Business Law § 352-c (1) (a) and (c) (the Martin Act), and perpetrating common-law fraud. As to Greenberg and Smith, the original complaint alleged, inter alia, that they engaged in at least two sham insurance transactions to improperly bolster AIG's reported loss reserves and several other schemes to portray an unduly positive picture of AIG's underwriting performance to the investing public.[1]

As a followup to their respective answers, which included advice of counsel defenses, Greenberg and Smith served document requests on AIG during the course of discovery, seeking, inter alia, all memoranda created during their tenure as officers and directors of AIG reflecting the advice of counsel, efforts to obtain the advice of counsel, and counsel's involvement in the four transactions giving rise to the subject charges (legal memoranda). As officers and directors of AIG, Greenberg and Smith claimed to have frequent interaction with internal and external counsel for AIG, that they separately had the authority to communicate with and direct the actions of AIG's counsel and each did so routinely, that Greenberg himself authored and received some of the legal memoranda at issue on this appeal, and that others at AIG who reported to defendants and upon whom they relied would have authored, received and relied on the advice and involvement of AIG counsel, as reflected in the legal memoranda. Following AIG's dismissal from the action, Greenberg and Smith issued subpoenas duces tecum to AIG seeking, inter alia, the legal memoranda. However, AIG refused

---

1. In February 2006, AIG entered into a settlement agreement with NYAG for payments totaling $800 million and the action was discontinued against AIG with prejudice. However, the caption on the record on appeal still names AIG as a defendant.

to honor the subpoenas on grounds of the attorney-client privilege and work product protection.

Greenberg and Smith then moved for an order compelling AIG to produce, inter alia, the legal memoranda.[2] At oral argument their counsel reasoned that under the laws of Delaware, where AIG is incorporated, Greenberg and Smith did not lose access to communications with corporate counsel when they left the board of directors. Since the documents were created while they were officers and directors of AIG and the decisions Greenberg and Smith made were often on the advice of counsel, their counsel further argued that Greenberg and Smith should have access to the legal memoranda to prepare an effective defense.

AIG opposed the motion and maintained that, consistent with New York law, the attorney-client privilege attaching to a corporation's confidential documents belonged to the corporation alone and therefore may be properly asserted even against former officers and directors. Counsel for AIG further asserted that when deciding privilege issues New York courts apply the law of the jurisdiction where the evidence in question will be introduced at trial or the jurisdiction of the discovery proceeding.[3]

The motion court denied the motion, holding that the attorney-client privilege attached to AIG, not its officers; in addition, it adopted the argument made by NYAG that "the recent amendment of the complaint [by omitting the claim for common-law fraud] eliminate[d] the element of scienter which would implicate advice of counsel" (*Spitzer v American Intl. Group*, 2006 NY Slip Op 30372[U], *2). We reverse.

As AIG concedes, New York courts routinely apply "the law of the place where the evidence in question will be introduced at trial or the location of the discovery proceeding" when deciding privilege issues. Thus, given the fact that in this case the privileged communications were made in New York and have

**2.** One day before oral argument, NYAG filed an amended complaint naming only Greenberg and Smith as defendants, which abandoned previously interposed claims of common-law fraud, but retained three causes of action against Greenberg and Smith arising under Executive Law § 63 (12) and General Business Law § 352-c (1) (a) and (c) (Martin Act). The amended complaint retained allegations made in the original complaint regarding Greenberg's and Smith's purported knowledge of wrongdoing.

**3.** Although a nonparty to the motion, NYAG asserted at oral argument that the legal memoranda were not relevant to the litigation because the amended complaint included only causes of action that could be pursued without a showing of scienter.

been sought in discovery in New York for use at a trial in New York in which the New York Attorney General is the plaintiff who is suing defendants for alleged breaches of New York's securities law, we hold that New York law is controlling. Indeed, the evidentiary privilege for confidential communications between attorney and client, perhaps the oldest of the common-law evidentiary privileges, is codified in New York as CPLR 4503 (*see* Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C4503:1). By contrast, other than being the state where AIG was incorporated, Delaware has no connection to this litigation. In any event, regardless of whether New York or Delaware law applies, Greenberg and Smith should be entitled to access the legal memoranda. Accordingly, the motion should have been granted.

The law is well settled in New York that, although a corporate director has an absolute, unqualified right, with roots in the common law, to inspect the corporate books and records, once he is removed from office such right terminates forthwith. "This is so manifestly because he no longer has a voice in governing the corporation" (*Matter of Cohen v Cocoline Prods.*, 309 NY 119, 124 [1955]). Nevertheless, a former director may still have a qualified right to inspect the books and records covering a period of his directorship whenever in the discretion of the trial court he can make a proper showing by appropriate evidence that such inspection is necessary to protect his personal responsibility interest as well as the interest of the stockholders (*id*; *Matter of Murphy v Fiduciary Counsel*, 40 AD2d 668, 669 [1972], *affd* 32 NY2d 892 [1973]). In *Cohen*, a longtime corporate director was about to undertake an investigation of alleged misappropriation of corporate funds and, after being rebuffed by the board in his efforts, commenced a proceeding to compel an inspection of the corporate books and records when he was not reelected as a director. The Court of Appeals held that it was error to grant the now former director such an inspection as a matter of absolute right, but remitted the proceeding to the trial court for a hearing as to the purpose for which petitioner had sought the inspection. In *Murphy*, this Court found that the record failed to establish facts that would warrant such inspection inasmuch as there was no satisfactory or convincing proof that there was a reasonable probability that petitioner had or might have a personal responsibility interest to protect during his stewardship so as to warrant the exercise of judicial discretion in his favor. There, we found that petitioner

had not been sued or threatened with suit and that there was no substantial showing that he had been or might reasonably be charged with malfeasance or nonfeasance during his incumbency. Here, however, there is no need for any factual inquiry since defendants have already been sued and seek the internal legal memoranda that were allegedly prepared for their use and relied upon by them in order to support their advice of counsel defense.

Generally, "[t]he attorney-client privilege encourages full and frank communication between attorneys and their clients" (*Tekni-Plex, Inc. v Meyner & Landis*, 89 NY2d 123, 138-139 [1996] [internal quotation marks omitted]), and applies to communications from the client to the attorney when the communication is "made for the purpose of obtaining legal advice and directed to an attorney who has been consulted for that purpose" (*Rossi v Blue Cross & Blue Shield of Greater N.Y.*, 73 NY2d 588, 593 [1989] [internal quotation marks omitted]). The proponent of the privilege bears the burden of establishing that the information sought is immune from disclosure (*Spectrum Sys. Intl. Corp. v Chemical Bank*, 78 NY2d 371, 377 [1991]).

In analyzing the issue of whether *former* directors are entitled to any privileged documents generated or created during their tenure at the corporation, the attorney-client communications here should be separated into two categories: general business matters and the four transactions at the heart of this action (*see Tekni-Plex*, 89 NY2d at 136). When analyzed in this manner, we find that the laws of New York and Delaware are substantively similar.

While neither *Cohen* nor *Murphy* involved privileged material, this Court, in *Fochetta v Schlackman* (257 AD2d 546 [1999]), exercised its discretion and, citing *Tekni-Plex*, held that, given the extent of his ownership interest and management of certain closely held corporations prior to his execution of a stock surrender, the attorney-client privilege was not properly invoked by successor management to deny a former 50% shareholder access to otherwise privileged presurrender materials essential to the proof of claims questioning the validity of his stock surrender. Here, there is no question regarding the extent of defendants' management of AIG. We also note that most recently in *Teachers' Retirement Sys. of La. v Greenberg*, the Delaware Chancery Court, addressing the identical question presented here and involving Greenberg and Smith as defendants, found that Greenberg and Smith were entitled to

discovery of AIG documents generated during their tenure as AIG officers and directors that directly or indirectly reflected legal advice regarding certain AIG business transactions and that AIG's production of such documents would not constitute a waiver of its privilege (New Castle County, July 11, 2007, Strine, Jr., V.C., C.A. No. 20106).[4]

Although in New York, unlike Delaware, the corporation and its current board of directors control the attorney-client privilege with regard to confidential communications arising out of general business matters (*Tekni-Plex*, 89 NY2d at 136; *cf. Talvy v American Red Cross in Greater N.Y.*, 205 AD2d 143, 149 [1994], *affd* 87 NY2d 826 [1995]), a former director is not *absolutely* barred from an inspection of all confidential documents generated during his tenure (*Cohen*, 309 NY 119, 124 [1955], *supra*), and upon a proper showing that an inspection of the corporate books and records covering the period of the directorship is necessary to protect the personal responsibility interest of the former director as well as the interest of the board, the former director may have a *qualified* right to an inspection of such documents (*id*; *Murphy*, 40 AD2d 668, 669 [1972], *supra*; *see also Matter of Cohen v C-C Clubs*, 10 Misc 2d 57, 58 [1958]). The qualification of that right of inspection clearly means that former directors must make a showing that the records sought are necessary to protect their personal responsibility interests. As noted above, defendants have clearly made such a showing.

Further, contrary to AIG's contention, the Court of Appeals' decision in *Tekni-Plex* (89 NY2d 123 [1996], *supra*) does not mandate denying Greenberg and Smith access to the privileged documents in question. *Tekni-Plex* involved a dispute over the acquisition of a corporation that manufactured and packaged pharmaceutical products. The Court of Appeals, in analyzing the issue of whether a former director was entitled to any privileged documents generated or created during his tenure at the corporation, separated privileged communications as to general business communications from those relating to the merger negotiations (at 136). The Court of Appeals held that Tekni-

---

4. However, along with a former director's right to learn of privileged information when he was a director "comes the obligation to maintain the confidentiality of that communication, since the privilege belongs to the [corporation] and is not the Director's to waive" (*American S.S. Owners Mut. Protection & Indem. Assn., Inc. v Alcoa S.S. Co., Inc.*, 232 FRD 191, 198 [SD NY 2005]).

Plex's former outside counsel, who was retained among other things to assist in Tekni-Plex's environmental compliance investigations, could not disclose to Tekni-Plex's former director environmental compliance communications that transpired while he was on the board. However, the new board was held to be "without authority to assert the attorney-client privilege to preclude [the former counsel] from revealing to [the former director] the contents of communications conveyed by [the former board] concerning the merger transaction" (at 139). Thus, as *Tekni-Plex* makes clear, the fact that Greenberg and Smith are no longer directors is not fatal to their motion to compel where their conduct while directors has been called into question and the inspection is needed to prepare their defenses (*C-C Clubs*, 10 Misc 2d at 58).

The issue here is not whether the legal memoranda constitute privileged attorney-client materials (they do) or whether Greenberg and Smith are entitled to assert or waive AIG's privilege (they are not), but whether Greenberg and Smith are among the class of persons legally allowed to *view* those privileged communications. Under both New York and Delaware laws, the fact that Greenberg and Smith are no longer directors is not fatal to their motion to compel, since their conduct while directors has been called into question and the inspection is needed to prepare their defenses.

Given that determining and reviewing document immunity claims are largely fact-specific processes (*Spectrum Sys.*, 78 NY2d at 381), on the record presented, we find that defendants are within the circle of persons entitled to view privileged materials without causing a waiver of the attorney-client privilege. Since Greenberg and Smith, while directors and officers of AIG, were privy to, and on many occasions actively participated in, legal consultations regarding the four subject transactions, AIG, as the proponent of the privilege, has failed to sustain its burden of establishing that the privilege is assertable to defendants, especially considering that their request is limited to the viewing of the legal memoranda.

Most significant to the issue of waiver is AIG's acknowledgement in its respondent's brief (at 6 n 4) that it

"has produced virtually all of the documents Appellants seek. After being served with Appellants' brief, the Securities and Exchange Commission ('SEC') asked AIG to waive its privilege and produce several

of the documents as part of its regulatory investigation of certain of the transactions at issue in this lawsuit. As a result, AIG then produced those documents to Appellants."

Applying New York law, the Southern District of New York has held that the voluntary production and disclosure of certain documents to the SEC, without objection on the ground of attorney-client privilege, must be deemed to have been a complete waiver of the privilege unless express claims of confidentiality were made as to the documents turned over at the time they were so disclosed (*Teachers Ins. & Annuity Assn. of Am. v Shamrock Broadcasting Co., Inc.*, 521 F Supp 638 [1981]). While the court's finding of the possibility of a limited waiver has been questioned and, in effect, overruled in the Second Circuit (*In re John Doe Corp.*, 675 F2d 482, 489 [2d Cir 1982]), the principle that a voluntary production of privileged documents must be deemed a complete waiver of the privilege is now well settled in the circuit, as is the principle that New York law controls. On the present record we are unable to determine whether AIG's concession that it "has produced virtually all of the documents Appellants seek" and has waived its privilege and produced "several of the documents" means that such documents include the documents relating to the four transactions that form the basis of the charges against defendants. Nevertheless, whether or not it is determined that AIG has waived its privilege, we hold that on the facts of this case, Greenberg and Smith have the unequivocal right to review relevant materials generated by or for AIG counsel while serving as AIG's directors and officers.

In light of this disposition, we do not reach the issue raised by defendants and NYAG regarding the claim that federal law, namely the National Securities Markets Improvement Act, preempts the Martin Act.

Accordingly, the order of the Supreme Court, New York County (Charles E. Ramos, J.), entered October 2, 2006, which, insofar as appealed from, denied the joint motion of individual defendants Greenberg and Smith to compel AIG to produce certain legal memoranda prepared during their tenure at AIG, should be reversed, on the law, with costs, the motion granted, and the matter remanded for further proceedings consistent herewith.

FRIEDMAN, J. (concurring). The question presented is whether

defendants Greenberg and Smith, former directors and officers of American International Group, Inc. (AIG), are entitled to an order compelling AIG to produce documents reflecting the legal advice on the transactions at issue that the company received—and that Greenberg and Smith themselves, in their capacities as directors and officers, also received—during the time Greenberg and Smith served on AIG's board. As more fully discussed below, it is my view that the laws of both New York (the state of AIG's principal place of business and the forum of this litigation) and Delaware (the state of AIG's incorporation) entitle the former directors to review these documents, notwithstanding that the documents are shielded from others by AIG's attorney-client privilege. I therefore concur in the reversal of Supreme Court's denial of the motion to compel document production.

At the outset, I observe that, given the absence of any conflict between New York law and Delaware law on the issue presented, I see no need for us to resolve the dispute concerning which state's law governs. Without taking a position on that question, I acknowledge that Greenberg and Smith have made a strong case for the application of Delaware law. Whether a former director is entitled, by virtue of that status, to have access to legal advice the corporation received during his or her tenure on the board seems to be a question of internal corporate governance, not of evidence, privilege or procedure generally (*cf. Rubinstein v Bullard*, 285 AD2d 366, 367 [2001] [director's "access to minutes and corporate records" was an "issue( ) of corporate governance"]). Still, since the law is the same in both Delaware and New York, we need not resolve the choice of law issue. I am writing separately because, unlike the majority, I am not prepared to say that, if there were a conflict, New York law would be applicable, and, unlike Justice McGuire, I believe that we should make clear that, under New York law as under Delaware law, Greenberg and Smith are entitled to the documents.

The Delaware courts have held that a corporation cannot assert the attorney-client privilege to deny a former director access to legal advice provided to the corporation while the director served on the corporation's board (*see Moore Bus. Forms, Inc. v Cordant Holdings Corp.*, 1996 WL 307444, 1996 Del Ch LEXIS 56 [1996], *appeal refused* 682 A2d 625 [Del 1996]; *Kirby v Kirby*, 1987 WL 14862, 1987 Del Ch LEXIS 463 [1987]; *accord Glidden Co. v Jandernoa*, 173 FRD 459, 473 [WD Mich 1997] [holding that, under Delaware law, former directors were entitled to access to legal advice the corporation received during the period they served on the board]; *see also Wechsler v Squad-*

*ron, Ellenoff, Plesent & Sheinfeld, LLP*, 994 F Supp 202, 211-212 [SD NY 1998] [citing *Moore, Kirby* and *Glidden,* inter alia, for the proposition that "a director is entitled to discovery of privileged documents from the time he was a director"]).* Nothing in these decisions supports AIG's contention that this rule applies only to closely held corporations. Indeed, in a Delaware derivative action in which Greenberg and Smith have been sued based on their alleged conduct as directors and officers of AIG *(Teachers' Retirement Sys. of La. v Maurice R. Greenberg et al.,* C.A. No. 20106 [Del Ch]), the Delaware Chancery Court issued an order in July 2007 that resolved the identical question presented here in favor of Greenberg and Smith.

I believe that the application of New York law would lead to the same result. In *Fochetta v Schlackman* (257 AD2d 546 [1999]), the plaintiff, a former principal of the defendant corporations, challenged the validity of the surrender of his stock in the corporations. The appeal concerned the plaintiff's motion to compel the corporations to produce documents reflecting legal advice the entities had received prior to the plaintiff's surrender of his stock. In holding that the plaintiff was entitled to production of such materials, this Court stated *(id.* at 546 [citation omitted]):

> "Given the extent of plaintiff's ownership interest and managerial involvement in defendant corporations prior to the disputed stock surrender, the motion court properly determined that the attorney-client privilege was not properly invoked by defendants to deny plaintiff access to otherwise privileged pre-surrender materials essential to the proof of his claims."

Here, Greenberg and Smith, like the plaintiff in *Fochetta,* had extensive "managerial involvement" in the corporation with which they were formerly associated. In fact, besides being directors, Greenberg was AIG's chairman and chief executive officer, and Smith was its chief financial officer, at the time of the transactions in question. Further, the complaint in this action alleges that Greenberg and Smith were the executives who

---

* Although Greenberg and Smith characterize *Wechsler* as a case applying New York law, the decision does not indicate which state's law the court viewed as applicable. The corporation at issue in *Wechsler* was, like AIG, a Delaware corporation with its principal place of business in New York *(see In re Towers Fin. Corp. Noteholders Litig.,* 1995 WL 571888, *2, 1995 US Dist LEXIS 21147, *5 [SD NY 1995]).

caused AIG to enter into the challenged transactions, and AIG does not deny that this was the case. AIG's contention that the *Fochetta* holding should be limited to closely held corporations is not persuasive; a director of a public corporation is entitled to rely on the legal advice of corporate counsel on purely corporate matters no less than a director of a closely held corporation. Accordingly, I conclude that Greenberg and Smith are entitled to review the documents in question under New York law.

Contrary to AIG's contention, the Court of Appeals' decision in *Tekni-Plex, Inc. v Meyner & Landis* (89 NY2d 123 [1996]), which is cited in *Fochetta*, does not require us to deny Greenberg and Smith access to the privileged documents in question. In *Tekni-Plex*, the Court of Appeals affirmed an order enjoining Tekni-Plex's former outside counsel (Meyner and Landis [M&L]) from disclosing to Tekni-Plex's former director (Tang) confidential communications between Tekni-Plex and the firm relating to environmental compliance that were generated during Tang's tenure on Tekni-Plex's board. The Court of Appeals made this determination on the specific ground that "the record fail[ed] to establish that M&L also represented Tang individually on these matters" (89 NY2d at 130). As commentators have observed, the basis for the *Tekni-Plex* result was the absence of "factual support for [Tang's] assertion" that he was a "joint client with the corporation" (Sher and Dely, *When Former Director Battles Company*, NYLJ, Dec. 2, 2002, at S1, col 1). The same article noted that the *Tekni-Plex* decision "left open whether a director who had intimate involvement in the privileged communications at issue [as Greenberg and Smith did here] is entitled to those communications after leaving the company" (*id.*).

In contrast to the silence of the record in *Tekni-Plex*, here, both Greenberg and Smith have affirmatively alleged, in their respective answers, that they engaged in the conduct for which they are now being sued in reliance on the legal advice of AIG's counsel, and AIG has not disputed the truth of this allegation. Further, there is no suggestion that any conflict of interest existed at the time of the subject transactions between AIG, on the one hand, and either Greenberg or Smith, on the other, that would have obligated the executives to retain separate counsel to advise them individually on such matters. In the latter regard, it is noteworthy that AIG was originally named as a defendant in this action but has since settled plaintiffs' claims against it. Under these circumstances, affording Greenberg and

Smith access to the documents in question is consistent with *Tekni-Plex*, in accord with *Fochetta*, and fundamentally fair.

It should be noted that, at this juncture, we are called upon to determine only whether Greenberg and Smith are entitled to production of the documents in question. What use, if any, the former directors may make of such documents, or of the legal advice reflected therein, in defending this action, is a question for another day.

Finally, I am not persuaded by the alternative ground Supreme Court adduced for denying the former directors' motion, namely, that plaintiffs (the Attorney General and Superintendent of Insurance), by their "recent amendment of the complaint," have "eliminate[d] [from their case] the element of scienter which would implicate advice of counsel" as a defense (*Spitzer v American Intl. Group*, 2006 NY Slip Op 30372[U], *2). We need not decide whether plaintiffs could, as they claim, prevail on their causes of action under the Martin Act (General Business Law § 352-c [1] [a], [c]) and Executive Law § 63 (12), as pleaded in the amended complaint, without proving scienter. Even if we assume for the sake of argument that plaintiffs are correct on this point, documents reflecting the legal advice AIG received concerning the very transactions under attack plainly constitute "matter material and necessary" to the defense of this action under CPLR 3101 (a), a category long held to be broader than that of evidence admissible at trial (*see* Siegel, NY Prac § 344, at 550 [4th ed]).

McGUIRE, J. (concurring). As Magistrate Judge Scoville stated after surveying the law of Delaware, "Delaware law recognizes a broad right in corporate directors to access corporate records and documents," a right that "extends to documents otherwise protected by the corporation's attorney-client privilege" (*Glidden Co. v Jandernoa*, 173 FRD 459, 473 [WD Mich 1997]). Thus, "directors have a right to access attorney communications of the company relating to the time that they served as directors" (*id.*). Accordingly, Greenberg and Smith have the unequivocal right under Delaware law to review relevant materials generated by or for AIG's attorneys while they served as directors of AIG (*id.*; *Moore Bus. Forms, Inc. v Cordant Holdings Corp.*, 1996 WL 307444, *4, 1996 Del Ch LEXIS 56, *12-13 [1996], *appeal refused* 682 A2d 625 [Del 1996]). In *Moore*, the court explained its holding as follows:

"Because the attorney-client privilege belongs to

the client, it would be perverse to allow the privilege to be asserted *against* the client. To adopt the defendants' position would achieve precisely that result. The client in this case is the Holdings board. [The former director] was a member of that board, having the same status as the other directors. No basis exists to assert the privilege against him" (1996 WL 307444 at \*6, 1996 Del Ch LEXIS 56 at \*18).

As the majority notes, moreover, a Delaware court recently addressed the same question presented in this case and held squarely in favor of Greenberg and Smith. In an unpublished order issued in related litigation, *Teachers' Retirement Sys. of La. v Greenberg* (C.A. No. 20106 [July 11, 2007]), Vice Chancellor Strine directed AIG to produce otherwise privileged documents to Greenberg, Smith and another former director, and explained that the production of the documents would not constitute a waiver of the privilege "because, under Delaware law, the . . . former directors . . . are entitled to access to certain of AIG's privileged documents generated during their tenure as directors of AIG by virtue of their status as former directors and/or to support their Section 141 (e) defense."

Of course, Vice Chancellor Strine's ruling also refutes AIG's contention that only former directors of closely held corporations enjoy such a right of access to privileged materials. But even putting *Teachers' Retirement System* aside, nothing in the text or reasoning of any of the Delaware cases suggests such a limitation (*see e.g., Moore, supra; AOC Ltd. Partnership v Horsham Corp.,* 1992 WL 97220, 1992 Del Ch LEXIS 110 [1992]; *Kirby v Kirby,* 1987 WL 14862, 1987 Del Ch LEXIS 463 [1987]). For this same reason, AIG is not persuasive in seeking to limit this right of access to derivative actions against former directors. Moreover, as is clear from the Delaware cases, and as Vice Chancellor Strine expressly stated in *Teachers' Retirement System,* this right is a "substantive right." It does not spring into being only when a plaintiff of a particular kind sues a former director.

Similarly, the fortuity that Greenberg and Smith have been sued in New York should not deprive them of this substantive right. As Justice Sullivan stated, "[o]ne of the abiding principles of the law of corporations is that the issue of corporate governance . . . is governed by the law of the State in which the corporation is chartered" (*Hart v General Motors Corp.,* 129

AD2d 179, 182 [1987], *lv denied* 70 NY2d 608 [1987]). The issue of "access to minutes and corporate records" by directors "essentially involves corporate governance" (*cf. Rubinstein v Bullard,* 285 AD2d 366, 367 [2001]). Accordingly, the law of Delaware is controlling (*Hart v General Motors, supra*; *Kikis v McRoberts Corp.,* 225 AD2d 455 [1996] ["plaintiff's claims are governed by the laws of Delaware as issues of corporate governance are determined by the State in which the corporation is chartered"]; *Glidden,* 173 FRD at 471 ["New York courts apply the law of the state of incorporation . . . to determine . . . issues involving a corporation's internal affairs"]).

Although the majority suggests otherwise in seeking to defend its holding that New York law is controlling on the issue of Greenberg and Smith's right to access the privileged materials, Delaware has the paramount interest in this dispute between AIG and two of its former directors (*cf. Hart,* 129 AD2d at 185 ["it is Delaware, not New York, which has an interest superior to that of all other States in deciding issues concerning directors' conduct of the internal affairs of corporations chartered under Delaware law" (footnote omitted)]). By contrast, New York has no substantial interest in the outcome of this dispute. Indeed, the absence of any such interest is dramatically if not conclusively demonstrated by the Attorney General's statement at the outset of the brief he submitted to this Court: "Plaintiffs [the People of the State of New York and the Superintendent of Insurance of the State of New York] take no position on the merits of this discovery dispute between Defendants and AIG." This neutrality reflects no lack of zeal on the part of counsel for the plaintiffs. Rather, it reflects the reality that, putting aside the general interest of the State of New York in seeing legal obligations honored and in broad discovery in actions brought in its courts, New York has no particular interest in whether AIG honors or denies the rights of Greenberg and Smith to access the privileged materials.

Delaware has at least two clear and substantial interests at stake in this dispute: its interest in the ability of directors of its corporations to defend themselves against accusations of misconduct, and its interest in encouraging full and frank communications between directors of its corporations and the attorneys who represent the corporations. This latter interest, of course, is an instance of the larger purpose served by the

attorney-client privilege: "to encourage full and frank communication between attorneys and their clients and thereby promote broader interests in the observance of law and administration of justice" (*Upjohn Co. v United States*, 449 US 383, 389 [1981]). Delaware's ability to vindicate these interests should not be dependent upon the vagaries of the law of evidence or privilege in other states. To conclude otherwise, as Greenberg and Smith aptly state, "would undermine the ability of Delaware officers and directors to act on behalf of Delaware corporations in *every* state."

For no apparent reason other than the convenience of New York courts, the majority accepts AIG's position and concludes that New York law bearing on the attorney-client privilege is controlling. Apart from its inconsistency with both the "abiding principle" stressed in *Hart v General Motors* and the other cases cited above, the majority's approach is flawed for other reasons. There is no issue in this case about whether the materials Greenberg and Smith seek to review are privileged or not. They are privileged and the issue in dispute is not a point of procedure or a subtlety of evidence law. Rather, what is at stake is the substantive right of access of former directors of Delaware corporations to privileged materials generated during their tenure.*

---

* If the Delaware corporation is not a party to the action in New York against a former director, it will not matter what the analogous New York law is or whether it should be controlling. After all, the Delaware corporation would either honor a demand by the former director for access or refuse the demand. In the latter event, the former director presumably could sue the corporation in Delaware and obtain access. If the Delaware corporation is a party to the action in New York against a former director but honors its obligation under Delaware law to provide access, it will not matter what the analogous New York law is and whether it is controlling. Thus, only if the Delaware corporation is a party to such an action and refuses to honor that obligation can the nature and potential applicability of New York law be of any moment. Of course, my view is that New York would not have any legitimate interest in permitting the corporation to refuse to honor its obligation. But even assuming that New York law on the privilege would deny access to a former director and that it would be controlling, it is far from clear that former directors of Delaware corporations would be stymied by a holding to that effect. Presumably, after a New York court first so held, former directors who feared being or are sued by the corporation in New York would bring their own action in Delaware to vindicate their substantive right under Delaware law. If the consequences of such a hypothetical holding could be so readily avoided, that would underscore the insubstantiality of any interest New York might have in applying its law to such disputes between Delaware corporations and their former directors.

Accordingly, I would reverse and grant the motion to compel without reaching the question of whether Greenberg and Smith would be entitled to review the documents if New York law were controlling.

MAZZARELLI, J.P., and ANDRIAS, J., concur with MALONE, J.; FRIEDMAN and McGUIRE, JJ., concur in separate opinions.

Order, Supreme Court, New York County, entered October 2, 2006, reversed, on the law, with costs, the joint motion of individual defendants Greenberg and Smith to compel AIG to produce certain legal memoranda prepared during their tenure at AIG granted, and the matter remanded for further proceedings consistent herewith.